LAGESEN, P. J., concurring.
I concur in the majority opinion's disposition of this appeal, but not fully in its reasoning.[1] The majority ultimately concludes that any legal error in failing to consider defendant's increased victimization in prison because of his intellectual disability is harmless on this record, because the trial court made an actual finding that defendant is not at any such increased risk of victimization. I do not read the trial court's ruling to encompass that factual finding, so I would consider the merits of defendant's proportionality challenges under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution.
But in framing that legal question, I do not understand it to be quite as broad as the majority opinion suggests. I understand the question to be whether the trial court erred when it determined that the evidence that defendant's intellectual disability places him at an increased risk *875 of victimization by other inmates while incarcerated does not bear on the inquiry of whether defendant's 75-month sentence is unconstitutionally disproportionate under either Article I, section 16 's proportionality clause, or the proportionality requirement that's been read into the Eighth Amendment. On that point, I would conclude that the trial court properly declined to take that evidence into account. *350 That is because that evidence pertains to conditions of confinement that are not part of the sentence imposed by the trial court and are not, therefore, properly part of the calculus of whether that sentence is a proportionate "penalt[y]" for purposes of Article I, section 16, or a proportionate "punishment" for purposes of the Eighth Amendment. I therefore would affirm for that reason.
Defendant, who has an intellectual disability, orally sodomized his five-year-old niece. Admitting that conduct, he pleaded guilty to first-degree sexual abuse, a Measure 11 offense carrying a mandatory 75-month term of imprisonment. Rejecting defendant's contention that his intellectual disability made any term of imprisonment unconstitutionally disproportionate in violation of Article I, section 16, and the Eighth Amendment, the trial court sentenced defendant to the 75-month sentence required by Measure 11. In so doing, the court considered how defendant's intellectual disability affected his ability to understand the wrongfulness of his conduct and his judgment in general-concluding that defendant understood that his conduct was wrong and that he did not "lack judgment," despite his diminished capacity. However, the court declined to consider evidence that defendant's intellectual disability subjected him to an increased risk of victimization while incarcerated.
On appeal, defendant contends that was error. Defendant's theory is that the conditions of his confinement, including the risk of harm posed by other inmates as a result of defendant's intellectual disability, are part of the "penalty" imposed by the trial court for purposes of the proportionality clause of Article I, section 16, and part of the "punishment" imposed for purposes of an Eighth Amendment proportionality analysis. He argues: "The severity of a prison sentence includes prison conditions and how a person will be *876 treated in that environment. A defendant's vulnerability in prison is directly related to that." And he asserts: "Because of the punishment imposed on him by his fellow inmates, sending defendant to prison for 75 months is a much more severe penalty than sending an average adult to prison for the equivalent amount of time."
In my view, defendant's theory is contrary to Oregon and federal law in several respects, and I would reject it for that reason.
First, under Oregon law, a sentencing court does not-and cannot-impose conditions of confinement. ORS 137.010(7) ; State v. Potter , 108 Or. App. 480, 481, 816 P.2d 661 (1991) ("Defendant is correct that the trial court has no authority to impose conditions of incarceration or parole."). In other words, a defendant's eventual conditions of confinement are not encompassed within the sentence imposed by a trial court. For that reason, they are not, in my view, properly part of any assessment whether the sentence imposed by a trial court comports with Article I, section 16, or the Eighth Amendment. Perhaps that is why I've been unable to locate a single case that includes conditions of confinement in the assessment of whether a sentence imposed is disproportionate.
Second, to the extent that it is appropriate to consider conditions of confinement in evaluating proportionality at the time of sentencing, it seems to me that the proper approach would be to look to the statutory and constitutional standards governing those conditions and to assess the proportionality of a term of incarceration based on the premise that those standards will be met. That is, the question should be whether the sentence imposed, if executed in compliance with the law governing conditions of confinement, is disproportionate. And the law-the Eighth Amendment, no less-imposes on the Department of Corrections the obligation to take reasonable steps to ensure that the conditions in which defendant is incarcerated are safe ones. Farmer v. Brennan , 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994). More to the point, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id . at 833, 114 S. Ct. 1970 (internal quotation marks and ellipses omitted).
*877 Oregon statutes likewise impose upon prison officials an obligation to protect inmates from injury: "The person of an inmate sentenced to imprisonment in the Department of Corrections Institution is under the protection of the law and the inmate shall not be injured except as authorized by law." ORS 421.105(2). If that is *351 the proper focus of proportionality analysis at the time of sentencing-whether the sentence imposed when carried out in accordance with governing law is disproportionate-defendant's evidence about the risk of harm he may face in prison does not bear on the analysis.[2]
Third, in view of the foregoing law, even if I'm wrong that evidence of potential risks posed by conditions of confinement does not bear on proportionality analysis under the state and federal constitutions, in my view, the evidence nonetheless would have to show, at a minimum, that the officials will be unable to meet their constitutional and statutory obligations to confine the person in question under conditions designed to ensure the person's safety. In plainer terms, it would have to show, in effect, that it is a foregone conclusion that the Department of Corrections cannot provide conditions of confinement that comport with legal standards, thereby making it appropriate to take those legally deficient conditions into account when assessing proportionality at the time of sentencing, even though the sentencing court, itself, does not impose the conditions of confinement. The evidence presented by defendant does not tend to suggest that it is a foregone conclusion that the Department of Corrections cannot fulfill its legal obligations to protect defendant from harm during his sentence. Thus, *878 even if evidence of conditions of confinement can bear on proportionality analysis in some circumstances, the trial court did not err when it concluded that the evidence presented by defendant did not bear on the inquiry under the circumstances of this case.

To the extent that the majority opinion concludes, ultimately, that defendant's sentence does not violate either Article I, section 16, of the Oregon Constitution or the Eighth Amendment to the United States Constitution, I agree with that conclusion. I also agree with the conclusion that defendant failed to preserve his contention that the trial court was required to consider the availability of treatment options in conducting its proportionality analysis. I also agree with the general overview of the law provided in the majority opinion.

That is not to say that it was not important for defendant to present that evidence at sentencing. Although a trial court lacks the authority to impose conditions of confinement, it does have the authority to recommend conditions of confinement. Potter , 108 Or. App. at 481, 816 P.2d 661. In the case of an intellectually disabled person such as defendant, such recommendations could provide the Department of Corrections with useful assistance in meeting its obligations to keep that defendant safe from other inmates while incarcerated by identifying the risks posed by the person's intellectual disability. And, of course, if the Department of Corrections fails to meet its obligations to an intellectually disabled inmate in conditions designed to discharge its obligation to protect the inmate from other inmates, the inmate may be entitled to habeas relief to secure removal from unconstitutionally unsafe conditions. See, e.g. , Barrett v. Peters , 360 Or. 445, 449, 383 P.3d 813 (2016) (explaining the function of habeas corpus in remedying unconstitutional conditions of confinement).